UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

DANA CASSIDY,                              )
                                          )
               Plaintiff,                 )
                                          )
        v.                                )          1:12-cv-00137-DBH
                                          )
CITY OF BREWER, et al.,                   )
                                          )
               Defendants                 )

## RECOMMENDED DECISION

Plaintiff Dana Cassidy owns a commercial building in Brewer, Maine and contends that Defendants, the City of Brewer and its Code Enforcement Officer, Ben Breadmore, are liable to him for money damages because Breadmore denied a building permit to Cassidy's tenant, The Rock Church, which sought to expand its existing church within Cassidy's building and discontinued its tenancy following the permit denial. Defendants have filed a motion to dismiss, which motion the Court referred for report and recommendation. I recommend that the Court grant the motion.

## THE PLEADINGS

Plaintiff's complaint states that he owns a commercial building in a part of Brewer zoned as a "convenience business district" in the City's Land Use Code. (Compl. ¶¶ 8-11.) Brewer's convenience business district does not include churches as a permitted use. (Id. ¶ 12.) It does, however, permit businesses such as funeral homes, theaters, clubhouses and clubs, community service organizations, and private schools, which Plaintiff alleges are similar, non-religious uses. (Id. ¶ 13.) Despite being a non-permitted use, Plaintiff leased a portion of his building to The Rock Church of Greater Bangor, Inc., which held religious services there. (Id. ¶ 16.) The

Complaint does not state it, but it appears that the Church's use of this property was a prior, non-conforming use when the convenience business district was zoned.

On March 30, 2009, Brewer granted to Rock Church a building permit to renovate space and operate a church within Plaintiff's commercial building.  (Id. ¶ 14.)  On June 17, 2011, Brewer issued a certificate of occupancy to Rock Church.  (Id. ¶ 15.)  Rock Church held religious services regularly and its congregation grew.  Because the congregation was outgrowing the leased space, Rock Church sought to lease additional space from Plaintiff and an agreement was reached to expand Rock Church's occupancy from 4,500 square feet to 14,000 square feet with a corresponding increase in monthly rent and a new, four-year lease term.  (Id. ¶¶ 18-20.)

In furtherance of the new agreement, on February 3, 2012, Rock Church submitted a commercial building permit application for the proposed expansion.  (Id. ¶ 21.)  On February 17, 2012, in his capacity as Brewer's Code Enforcement Officer, Defendant Breadmore denied Rock Church's application on the ground that it amounted to the expansion of a non-conforming use.  (Id. ¶ 22;  Compl. Ex G.)  In March 2012, Rock Church gave notice to Plaintiff that it was terminating its tenancy in the Premises and relocating to a different community.  (Compl. ¶ 23.)

Based on these factual allegations, Plaintiff alleges that Defendants "directly and proximately caused him economic injury" by "violating the federal rights of one of his tenants, a church."  (Id. ¶ 1.)  Plaintiff cites the Religious Land use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq., as the federal right he seeks to vindicate, contending that Brewer's Land Use Code "treats the church unequally and discriminates against it on the basis of religion."  (Id. ¶ 2.)  Plaintiff also cites RLUIPA as the basis for this Court's exercise of jurisdiction.  (Id. ¶ 3.)

Plaintiff sues not only Brewer, but also Breadmore in both his official and personal capacities.  (Id. ¶ 6.)  Plaintiff complains about religious discrimination and exclusion under RLUIPA based on a land use regulation that excludes churches from the convenience business district.  This claim is set forth in three counts, alleging (1) treatment of religious institutions on less than equal terms with nonreligious institutions under 42 U.S.C. § 2000cc(b)(1);  (2) discrimination against religious institutions on the basis of religion under 42 U.S.C. § 2000cc(b)(2);  and (3) unreasonable limitation of religious assemblies, institutions, and structures within Brewer under 42 U.S.C. § 2000cc(b)(3).   Finally, in a fourth count, Plaintiff asserts a claim under 42 U.S.C. § 1983, alleging a violation of the civil rights of both Plaintiff and Rock Church.  For relief, Plaintiff requests an order declaring that Brewer's Land Use Code is unlawfully written, an award of monetary damages, an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and an award of such further relief as may be deemed just.

## SUMMARY DISMISSAL STANDARDS

Rule 12 of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for, among other things, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To state a claim, a plaintiff must set forth (1) "a short and plain statement of the grounds for the court's jurisdiction";  (2) "a short and plain statement of the claim showing that the pleader is entitled to relief";  and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a).  In deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a claim for recovery that is "plausible on its face."  Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)).

A complaint is also subject to summary dismissal based on a plaintiff's failure to demonstrate that the Court has jurisdiction over the subject matter of the case. Fed. R. Civ. P. 12(b)(1). If the plaintiff's pleading is challenged on this ground, the plaintiff bears the burden of demonstrating that subject matter jurisdiction exists and the Court may consider evidence outside of the pleadings to determine the jurisdictional question. Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996). The Court should endeavor to resolve challenges to its exercise of jurisdiction before addressing the merits of a case. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998); Donahue v. City of Boston, 304 F.3d 110, 117 (1st Cir. 2002).

## DISCUSSION

Pursuant to its powers under the Spending Clause and the Commerce Clause, Congress passed RLUIPA to reinforce the free exercise of religion on behalf of both non-institutionalized persons whose free exercise of religion may be burdened by land use regulation and institutionalized persons whose free exercise of religion may be burdened by conditions of confinement imposed in penological institutions. 42 U.S.C. §§ 2000cc, 2000cc-1; Cutter v. Wilkinson, 544 U.S. 709, 714-715 (2005); Kuperman v. Wrenn, 645 F.3d 69, 78-79 & n.15 (1st Cir. 2011). In the land use regulation context, RLUIPA prohibits governments from imposing or implementing land use regulation "in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden [furthers] a compelling governmental interest [in] the least restrictive means." 42 U.S.C. § 2000cc(a)(1).[1]

---

[1]     RLUIPA also prohibits "discrimination and exclusion," in the following language:

(1) Equal terms. No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.
(2) Nondiscrimination. No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious

4

RLUIPA authorizes private persons to pursue civil actions for violations of its terms and to "obtain appropriate relief against a government." Id. § 2000cc-2(a). RLUIPA defines "government" to include, among others, municipalities and "any other person acting under color of State law," id. § 2000cc-5(4), which gathers up both of the named defendants in this action. RLUIPA includes a section of "rules of construction" and states, among others things, that its terms "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this Act and the Constitution." Id. § 2000cc-3(g).

Defendants' primary argument is that Plaintiff lacks standing to bring an action under RLUIPA because he is not seeking to protect his own free exercise of religion. As a component of this argument, Defendants assert that the Plaintiff's alleged economic injury was not caused by them and is not ripe for judicial resolution because Rock Church never appealed the denial of the permit or sought a variance with Brewer's Zoning Board of Appeals and has walked away from the controversy. Defendants maintain that there is no practical relief the Court could provide, even in the context of a declaratory judgment, as Rock Church has moved on and Plaintiff does not allege that he has another church tenant wanting to lease expanded space in his building. As for money damages, Defendants argue that Plaintiff cannot utilize RLUIPA or Section 1983 to recover money damages for an economic injury arising from Rock Church's unilateral choice to vacate Plaintiff's building. (Mot. to Dismiss at 2-4, ECF No. 6.) These arguments and Plaintiff's responses are assessed below.

---

denomination.
   (3) Exclusions and limits. No government shall impose or implement a land use regulation that--
     (A) totally excludes religious assemblies from a jurisdiction; or
     (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.

42 U.S.C. § 2000cc(b).

**A.      Standing**

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance.  This inquiry involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'"  Kowalski v. Tesmer, 543 U.S. 125, 128-29 (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)).  Standing limitations arise "from the limited nature of federal court jurisdiction, and specifically from the grounding of the federal judicial power in 'Cases' and 'Controversies.'"  Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 46 (1st Cir. 2011) (citing U.S. Const. art. III, § 2).  The core constitutional requirements of standing applicable to every litigant are:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Ariz. Christian Sch. Tuition Org. v. Winn, 131 S. Ct. 1436, 1442 (2011) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

Onto these constitutional requirements the Supreme Court has overlaid "additional prudential limitations on standing, including 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked."  McKee, 649 F.3d at 46 (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)).

As a general rule, a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth, 422 U.S. at 499. As explained by the Supreme Court in Singleton v. Wulff:

> Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation. The reasons are two. First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not. Second, third parties themselves usually will be the best proponents of their own rights. The courts depend on effective advocacy, and therefore should prefer to construe legal rights only when the most effective advocates of those rights are before them. The holders of the rights may have a like preference, to the extent they will be bound by the courts' decisions under the doctrine of stare decisis.

428 U.S. 106, 113-14 (1976). "Without such limitations . . . the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." Warth, 422 U.S. at 500.

"Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." Id. Assuming the constitutional minimum for standing exists, "persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others, and, indeed, may invoke the general public interest in support of their claim." Id. at 501. But in the absence of a grant of a right of action to the party bringing suit, it is assumed that the party who actually holds the right in question "has the appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropriate presentation." Tesmer, 543 U.S. at 129. This rule is not absolute, however, and exceptions are

7

recognized where the party seeking third-party standing "has a 'close' relationship with the person who possesses the right" and "there is a 'hindrance' to the possessor's ability to protect his own interests."  <u>Id.</u> at 130 (quoting <u>Powers v. Ohio</u>, 499 U.S. 400, 411 (1991)).[2]  When an exception to the third-party rules is being considered, courts must also consider "the impact of the litigation on third party interests."  <u>Caplin & Drysdale v. United States</u>, 491 U.S. 617, 623 n.3 (1989); <u>see</u> <u>also</u> <u>Sec'y of Maryland v. Joseph H. Munson Co.</u>, 467 U.S. 947, 957 n.7 (describing this requirement as a "crucial factor").

"The standing inquiry is both plaintiff-specific and claim-specific.  [A] reviewing court must determine whether each particular plaintiff is entitled to have a federal court adjudicate each particular claim that he asserts."  <u>Pagan v. Calderon</u>, 448 F.3d 16, 29 (1st Cir. 2006) (citing <u>Allan v. Wright</u>, 468 U.S. 737, 752 (1984)).  What follows is a claim-specific inquiry that applies the Supreme Court's standing rules to Plaintiff's claim-specific allegations.

### 1. Section 1983

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

---

[2]     The <u>Tesmer</u> Court noted that these requirements have been lessened in certain circumstances, including cases involving restraints on free speech, <u>Tesmer</u>, 543 U.S. at 130 (citing <u>Sec'y of State of Md. v. Joseph H. Munson Co.</u>, 467 U.S. 947, 956 (1984)), or "when enforcement of the challenged restriction against the litigant would result indirectly in the violation of third parties' rights," <u>id.</u> (quoting <u>Warth</u>, 422 U.S. at 510).  In the <u>Joseph H. Munson Co.</u> opinion, the Supreme Court allowed third-party standing to challenge a statute as overbroad, observing: "[W]here the claim is that a statute is overly broad in violation of the First Amendment, the Court has allowed a party to assert the rights of another without regard to the ability of the other to assert his own claims and with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity."  467 U.S. at 957 (internal quotation marks omitted).  The Supreme Court has cautioned that "application of the overbreadth doctrine is strong medicine that should be invoked only as a last resort."  <u>Joseph H. Munson Co.</u>, 467 U.S. at 958 (internal quotation marks omitted).  Although I note the overbreadth rule, Cassidy has not sought to apply this rule in the RLUIPA context.

42 U.S. C. § 1983.  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  "The first step in any such claim is to identify the specific constitutional right allegedly infringed."  Id.

Plaintiff fails to provide any meaningful presentation concerning any professed constitutional claim in Count IV.  In the section of Plaintiff's Response to the Motion to Dismiss that addresses standing to press a Section 1983 claim, Plaintiff states:  "[T]his case involves a § 1983 claim regarding statutory violations resulting in harm to the Plaintiff."  (Pl.'s Response at 12, ECF No. 8.)  From there, Plaintiff discusses the sufficiency of his pleading only in reference to RLUIPA, stating that Defendants' zoning decision "deprived Rock Church of its rights and imposed unlawful zoning restrictions on Plaintiff's property" and that "Defendants' actions directly resulted in harm to Plaintiff."  (Id.)  Plaintiff utterly fails to articulate what his constitutional claim is, either in terms of his personal rights under the Constitution or in terms of Rock Church's rights under the Constitution.  Plaintiff's failure to articulate what the constitutional injury-in-fact is calls for dismissal of the claim in Count IV to the extent it suggests that Plaintiff is advancing a claim for the violation of constitutional rights.

The resulting question is whether Plaintiff has standing to pursue a statutory claim under RLUIPA.  Defendants have not argued that the Section 1983 claim is unavailable for a RLUIPA violation and consequently, I have not addressed that concern.  However, the Supreme Court has cautioned that Section 1983 "does not provide an avenue for relief every time a state actor violates a federal law."  City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 119 (2005). Where a federal statute, such as RLUIPA, contains its own authorization of an action and judicial remedies, the Court must determine whether Congress meant for litigants to be able to pursue

potentially alternative remedies in a Section 1983 action.  Id. at 120-21.  "The provision of an

express, private means of redress in the statute itself is ordinarily an indication that Congress did

not intend to leave open a more expansive remedy under § 1983."  Id. at 121.  There are a few

unpublished decisions on this issue.  See Alvarez v. Hill, No. CV 04-884-BR, 2010 WL 582217,

*12-15, 2010 U.S. Dist. Lexis 12637, *32-35, *39-40 (D. Or. Feb. 12, 2010) (concluding that

RLUIPA does not authorize damages awards and that a Section 1983 claim cannot be used to get

around this limitation in claims against a state and state employees);  Thomas v. Parker, No.

CIV-07-599-W, 2008 U.S. Dist. Lexis 110287, *66 n.34 (W.D. Okla. May 27, 2008) (Mag. J.

Report and Recommendation) ("[T]o the extent RLUIPA creates its own remedial scheme,

Plaintiff would be foreclosed from using § 1983 as a means to redress his RLUIPA claims.")

(collecting additional, unpublished opinions), 2008 WL 2894842 (order adopting Mag. J. Report

and Recommendation).  In any event, Plaintiff has presented his RLUIPA claim both through

Section 1983 and directly through RLUIPA and, as far as standing is concerned, the analysis is

the same.

### 2.   *RLUIPA*

RLUIPA authorizes civil actions in the following language:  "A person may assert a

violation of this Act as a claim or defense in a judicial proceeding and obtain appropriate relief

against a government."  Id. § 2000cc-2(a).  This language is broad, as "a person" and "a

violation" might be construed to mean "any person" and "any violation."  This language is

immediately followed by a provision related to standing, however, which reads:  "Standing to

assert a claim or defense under this section shall be governed by the general rules of standing

under article III of the Constitution."  Id. § 2000cc-2(a).

In Plaintiff Cassidy's view, Congress's authorization of a civil action by "a person" clearly expresses congressional intent that someone in his position have available a claim for foreseeable harm that results from any violation of free exercise rights protected by RLUIPA, even if the violation in question does not burden his own religious exercise, so long as there is an injury-in-fact that traditional judicial remedies could redress.  (Pl.'s Response at 2-3.)  The language selected by Congress to authorize civil actions is sweeping.  However, likely because of this fact, it is immediately followed with language providing that the general rules of standing will apply in any action.  That additional language would be entirely unnecessary but for the fact that the immediately preceding language is so broad in scope.  To my reading, Congress's inclusion of the language related to the general rules of standing immediately after the language authorizing civil actions only makes sense if it is understood to restrain the scope of the civil action authorization.  Because of the standing language, it is appropriate to evaluate Plaintiff's RLUIPA claims in relation to the usual third-party standing rules.

Defendants argue that Plaintiff lacks standing because Rock Church chose to terminate its tenancy rather than contest the code enforcement officer's denial of the permit to expand Rock Church's use.  (Mot. to Dismiss at 2-3.)  They explain:  "Plaintiff's injury was not any final decision by Brewer that resulted in religious discrimination against his tenant;  it was instead the Church's decision not to further pursue the Commercial Building Permit and to terminate its tenancy that caused Plaintiff's economic harm."  (Id. at 3.)  This argument essentially combines the injury-in-fact and causation inquiries.  As for redressability, Defendants add that "there is no indication that the issuance of a declaratory judgment by this Court concerning the legality of Brewer's Land Use Code would redress any alleged injury suffered by Plaintiff" because Rock Church has now moved on and Plaintiff has not alleged that he anticipates leasing space to

another religious assembly or institution.  (Id. at 3-4.)  I do not agree with Defendants that

Plaintiff's RLUIPA claim does not describe an injury-in-fact, causally related to a land use

regulation, which could be redressed with traditional remedies.  Plaintiff has identified a personal

economic injury that arose from a permitting decision and that could be redressed with

compensatory damages, assuming such damages are available against Defendants.  However,

Plaintiff's action does not hold out any prospect of remediating anyone's religious exercise rights

because of Rock Church's departure from the controversy and, consequently, prudential

limitations of the Court's exercise of jurisdiction warrant dismissal of the RLUIPA claims for

lack of standing.

       a.  Injury-in-fact

     The injury-in-fact requirement is not severe.  "The injury-in-fact inquiry 'serves to

distinguish a person with a *direct stake* in the outcome of a litigation *even though small* from a

person with a mere interest in the problem.'"  Adams v. Watson, 10 F.3d 915, 918 (1st Cir. 1993)

(quoting United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412

U.S. 669, 690 n. 14 (1973)).  Plaintiff's experience of an actual economic injury makes him

something more than a person with a mere interest in the problem.  The fact that he suffered an

actual loss satisfies the injury-in-fact requirement.  Save our Heritage, Inc. v. FAA, 269 F.3d 49,

55 (1st Cir. 2001).  The Court "may reasonably expect that a person so harmed will, as best he

can, frame the relevant questions with specificity, contest the issues with the necessary

adverseness, and pursue the litigation vigorously.'"  Adams, 10 F.3d at 918-19 (quoting Barlow

v. Collins, 397 U.S. 159, 172 (1970)).

### b.   Causation

As for causation, Plaintiff adequately alleges that his injury arose because of Defendants' enforcement of the challenged land use restriction.  Plaintiff's allegations thus meet both the injury-in-fact and causation requirements.  Loss of the church tenant due to an inability to rent available space had a concrete and particularized economic impact on Plaintiff and, according to the complaint, the loss would not have arisen but for the fact that Brewer does not permit church uses of property within the convenience business district.

Defendants otherwise contend that causation cannot be established because the Brewer Zoning Board of Appeals was not asked to grant a variance or otherwise review the denial of the permit application.  (Mot. to Dismiss at 3.)  However, it was because of the denial of the permit application that Plaintiff's tenant decided to terminate its leasehold.  Defendant fails to cite any precedent holding that exhaustion of administrative remedies is a necessary prerequisite of showing causation in the context of a standing analysis.[3]

### c.   Redressability

Finally, Plaintiff must demonstrate that his action would redress the injury in question.  In this case, Plaintiff brings suit on the ground that the challenged conduct violated RLUIPA because it prevented Rock Church from expanding its religious use of his commercial building.  Plaintiff suffered a consequential injury that could be redressed in damages, assuming damages are available, or could be redressed with declaratory or injunctive relief, assuming a tenant remained to occupy an expanded space in his building for religious purposes.  Ordinarily, these kinds of circumstances would demonstrate standing to sue.  However, because the right in question is the right of a third-party to freely exercise religion, the standing inquiry is complicated by third-party standing considerations.  Plaintiff has adequately alleged that he

---

[3]        "Finality," as opposed to "exhaustion," will be addressed in relation to the "ripeness" doctrine.

suffered an injury that was a foreseeable consequence of an alleged violation of his tenant's right to expand its religious use of his property, but the fact that relief in damages could make him whole does not establish that such relief would redress the third-party interest of Rock Church. See Eulitt v. Me. Dep't of Educ., 386 F.3d 344, 351 (1st Cir. 2004) ("An individual who asserts the . . . rights of a third party must, of course, satisfy the Article III requirements of injury in fact, causation, and redressability with respect to the third-party claim."). These issues are addressed further in the context of the prudential rules concerning third-party standing.

> d.     Whether Congress has granted a right of action, either expressly or by clear implication, to landowners, irrespective of standing concerns

If Plaintiff can demonstrate that RLUIPA expressly or by clear implication affords him a cause of action for the relief he seeks, then his case could go forward on that basis, irrespective of the outcome of a third-party standing analysis. For reasons already stated, although RLUIPA contains an expansive authorization for civil actions, it also specifically calls for a standing analysis according to the general rules. The fact is that RLUIPA exists to protect religious exercise and, with that in mind, is to be "construed in favor of a broad protection of religious exercise," 42 U.S.C. § 2000cc-3(g), not rents. Plaintiff could not maintain a RLUIPA action but for the asserted violation of his former tenant's RLUIPA rights. Plaintiff does not have a direct cause of action on these facts. Despite the absence of a direct cause of action, Plaintiff can advance his action under RLUIPA on the back of a tenant's rights if he can demonstrate that he has a close relationship with the tenant and that there exists a hindrance to the tenant's ability to protect its own interest, which will be advanced by the action. Tesmer, 543 U.S. at 130.

> e.     Close relationship

According to Plaintiff, his landlord-tenant relationship with Rock Church is a sufficiently close relationship to overcome the prudential concern that he might not pursue the third-party

interest with zeal.  (Pl.'s Response at 12 (citing Craig v. Boren, 429 U.S. 190, 195 (1976)

(involving a vendor-consumer relationship) and Pierce v. Soc'y of Sisters, 268 U.S. 510, 535

(1925) (involving a school-student relationship)).  I assume for the sake of argument that the

landlord-tenant relationship between Plaintiff and Rock Church satisfies the close relationship

requirement because the land use regulation that is challenged in this litigation "preclude[d] or

otherwise adversely affect[ed] a relationship existing between [Plaintiff] and the [church] whose

rights assertedly [were] violated."  Warth, 422 U.S. at 510.  With respect to Rock Church,

Plaintiff has identified an existing relationship adversely affected by the purported deprivation.

       f.      Hindrance/Benefit Conferred

    As for the issue of "hindrance," Plaintiff maintains that he need not address it because he

"is protecting his own interests in that continued violation of RLUIPA impacts his ability to lease

property to religious institutions as well as Rock Church's statutory rights."  (Pl.'s Response at

12.)  I reject the argument that the "hindrance" concern does not apply when a landlord brings a

RLUIPA action.  This would only be so if RLUIPA granted landlords and landowners direct

causes of action to challenge land use regulations regardless of their desire to engage in religious

exercise.  The persons with direct actions are those whose religious exercise is burdened.

    As for Rock Church's rights, Plaintiff fails to demonstrate that there is anything standing

in the way of Rock Church protecting its own interest.  A religious assembly or institution

desirous of using premises in a restricted zone certainly has the wherewithal to advance any

RLUIPA interest that may be at stake.  Plaintiff's allegations describe an expanding church with

an established base of parishioners.  Plaintiff has not advanced any argument that Rock Church

"is generically unable to assert its rights or that the circumstances of this case create some

idiosyncratic barrier to such a suit."  Eulitt, 386 F.3d at 352.  The only burden on Rock Church

would have been to continue renting its usual space from Plaintiff pending litigation.  That was not a hindrance given Plaintiff's desire to continue renting to Rock Church.

In Dixon v. Town of Coats, Judge Britt of the Eastern District of North Carolina decided that a private landowner with no personal religious exercise interest to vindicate had standing to pursue claims under RLUIPA where the local zoning board denied a permit to allow the landowner's current tenant, a church group, to use his property.  Dixon v. Town of Coats, No. 5:08-cv-489-BR, 2010 WL 2347506, *2, 2010 U.S. Dist. Lexis 56740, *3-*6 (E.D.N.C. June 9, 2010).  In response to the defendants' standing challenge, Judge Britt wrote that "there is hardly a wholesale ban on private landowners asserting substantial burden claims under RLUIPA." 2010 WL 2347506, *5, 2010 U.S. Dist. Lexis 56740, *14 (citing DiLaura v. Ann Arbor Charter Twp., 30 Fed. Appx. 501, 507 (6th Cir. 2002) (per curiam, unpublished) (finding standing on the part of landowner and a religious institution pursing the RLUIPA litigation in tandem) and Moxley v. Town of Walkersville, 601 F. Supp. 2d 648, 660 (D. Md. 2009) (involving landowner claims; standing not raised by defendant)[4]).  I agree with Judge Britt that there is hardly a wholesale ban on private landowners challenging land use regulations under RLUIPA.  Because the landowner's property is burdened by the regulation, the landowner is a natural litigant to bring a RLUIPA challenge in many circumstances where there is an actual injury to the landlord. However, as with the constitutional claims, Plaintiff must articulate why it is that Rock Church is not able to pursue its own rights under RLUIPA and why the litigation will advance the third-party's religious exercise rights.[5]  Plaintiff has failed to identify any obstacle that prevented Rock

---

[4]     Moxley included Fourteenth Amendment claims of "class-based, invidiously discriminatory animus."  601 F. Supp. 2d 662-63.  This likely would change the standing analysis.  See footnote 7, infra.  The PACER docket for the Moxley case reflects a stipulation of dismissal following settlement.

[5]     In Dixon, the plaintiffs' property was repeatedly leased to religious groups and the plaintiffs also alleged that "they intend[ed] to limit its rental to 'a Christian church'."  2010 U.S. Dist. Lexis 56740, *7.  It thus appears that a prospective tenant was standing by, ready to occupy the space.

Church "from bringing suit to protect itself against the imagined infringements." Eulitt v. Me. Dep't of Educ., 386 F.3d 344, 351 (1st Cir. 2004).

There is no apparent hindrance preventing Rock Church from pursuing its own rights related to its religious exercise.  Moreover, the relief requested in the action is not designed to serve the religious exercise interest of Rock Church or any other identifiable religious institution or assembly.  In this case, Rock Church has departed and Plaintiff requests only compensatory damages and declaratory relief, without identifying a prospective religious-use tenant who would occupy the expanded square footage for which Rock Church sought the permit.

RLUIPA is designed to protect religious exercise from overly burdensome land use regulation.  In the third-party standing context, the fact that Plaintiff suffered his own economic loss and therefore is a sufficiently "interested" plaintiff to pursue the action with zeal does not direct a conclusion that he has standing to pursue a claim for money damages.  "[M]ore important than the nature of the relationship between the litigant and those whose rights he seeks to assert is the impact of the litigation on the third-party interests." Eisenstadt v. Baird, 405 U.S. 438, 445 (1972).  In similar scenarios Courts have inquired whether the requested relief would do anything for the party who actually holds the rights that are at stake. Conti v. City of Fremont, 919 F.2d 1385, 1388 (9th Cir. 1990) (holding in the context of first amendment and equal protection claims that club owner lacked standing to pursue damages for infringement of his patron's rights because awarding him damages could not redress his former patron's rights); Club Extreme, Inc. v. City of Wayne, No. 07-15308, 2010 U.S. Dist. Lexis 39080, *13 (E.D. Mich. Apr. 21, 2010) (following Conti in a similar context).

Plaintiff's action does not hold out the prospect of resolving any pending controversy over RLUIPA rights because Rock Church has departed the premises and no other religious-use

17

tenant has come forward to fill its shoes.  Although I agree with Plaintiff that there is no

wholesale bar against him serving as a plaintiff in *a* RLUIPA action, I nevertheless conclude that

third-party standing rules stand in the way of Plaintiff serving in that capacity in *this* action

because an award of money damages and a declaratory judgment[6] from this Court would do

nothing to vindicate Rock Church's alleged right to freely exercise religion within an expanded

space in Plaintiff's commercial building.[7]

## B.    Ripeness

Defendants argue that Plaintiff's action is not ripe because Defendant Breadmore's

decision as code enforcement officer to deny the permit application was not a "final" action on

the part of the Town of Brewer.  Defendants cite a line of precedent requiring that parties pursue

an appeal or variance with a municipality's zoning board of appeals (or other zoning authority)

before commencing RLUIPA litigation.  (Mot. to Dismiss at 6-7.)  A number of circuit courts of

appeals have held that, with limited exceptions, RLUIPA litigants must pursue a final decision

from the municipal zoning authority, through a variance application or otherwise, in order for

their RLUIPA claim to be ripe for judicial review.  The exceptions arise when pursuing an

---

[6]     Declaratory relief in the absence of a case or controversy concerning a particular party's religious exercise could benefit religious exercise in the abstract, but as far as the general public is concerned, declaratory relief would amount only to an advisory opinion.  See, generally, MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126-27 (2007) (discussing when a plea for declaratory relief amounts to a case or controversy and noting that the line between definite and concrete disputes and mere advisory opinions is "not . . . the brightest").  Additionally, Plaintiff does not enjoy a close relationship with the general public.

[7]     In my research I have identified Young Apartments, Inc. v. Town of Jupiter, 529 F.3d 1027 (11th Cir. 2008), as a potentially relevant precedent.  In Young Apartments, the Eleventh Circuit vacated an order dismissing a landlord's Section 1983 claims for alleged violations of the equal protection rights of tenants.  The District Court ruled that the landlord did not have standing to pursue a claim based on the constitutional rights of minority tenants. The Eleventh Circuit vacated the ruling based on the fact that the landlord alleged actual injury and based on "the uncontroversial principle that it is unconstitutional for a state actor, motivated by discriminatory animus, to interfere with an individual's right to contract or associate with members of a protected class."  529 F.3d at 1039.  The Court held that the non-minority landlord's "own injury is sufficient to confer standing, separate from the question of whether the non-minority plaintiff also has standing to vindicate the rights of third parties."  Id. at 1040.  I do not regard Young Apartments as persuasive precedent for purposes of the instant case because it involved Fourteenth Amendment interests and there is no factual allegation in this case that Defendants harbor discriminatory animus toward religious exercise or toward Plaintiff based on his association with a religious assembly or institution.

appeal or variance with the zoning board of appeals would be futile or when the zoning board

lacks the authority to perform its own decision making on the land use question.  See Murphy v.

New Milford Zoning Comm'n, 402 F.3d 342, 349 (2d Cir. 2005.)

     The finality rule involves an expansion of the Supreme Court's takings jurisprudence in

Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S.

172 (1985) (imposing finality as a prerequisite to takings litigation).  See Guatay Christian

Fellowship v. County of San Diego, 670 F.3d 957, 976-80 (9th Cir. 2011) (collecting cases

extending the rule to the RLUIPA context).  The First Circuit has not addressed the question of

whether it is appropriate to extend the finality requirement of takings jurisprudence to RLUIPA

actions.  However, it has declined to apply the finality requirement in the context of substantive

due process claims advanced in the zoning context, which may or may not predict like treatment

of a RLUIPA challenge to zoning regulation.  Smithfield Concerned Citizens for Fair Zoning v.

Smithfield, 907 F.2d 239, 242-43 (1st Cir. 1990).

     Plaintiff argues that the finality rule would not apply to him, in any event, because it

would have been futile to pursue an appeal or a variance with the Brewer Zoning Board of

Appeals.  Plaintiff observes that the Land Use Code's standard for obtaining a variance does not

include violations of federal law (other than takings) as among the grounds for granting a

variance.  (Pl.'s Response at 5-7; Pl.'s Ex. A, ECF No. 8-1.)  Defendants respond that perhaps

the zoning board could have fashioned some discretionary relief under Article 5 or Article 13 of

the Brewer Land Use Code.  (Def.'s Reply at 5-6, ECF No. 9.)  The parties' competing

presentations on this point suggest that Plaintiff has the better of the finality argument because

neither the appeal language or variance standard stated in the Brewer Land Use Code promises

any relief from a use restriction based on a federal law such as RLUIPA.[8]  However, Defendants otherwise have demonstrated that this case has lost its ripeness (or become mooted) by Rock Church's departure from the controversy.

The First Circuit characterizes the ripeness doctrine as a means of avoiding judicial entanglement "in abstract disagreements."  Stern v. United States District Court, 214 F.3d 4, 10 (1st Cir. 2000).  Ripeness assessments entail a two-part test.  "First, it is necessary to determine whether the issue presented is fit for judicial review—an inquiry that 'typically involves subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends on facts that may not yet be sufficiently developed.'"  Id. (quoting Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 535 (1st Cir. 1995)).  "Second, it is necessary to evaluate the extent to which withholding judgment will impose hardship—an inquiry that typically 'turns upon whether the challenged action creates a direct and immediate dilemma for the parties.'"  Id. (quoting W.R. Grace & Co. v. EPA, 959 F.2d 360, 364 (1st Cir. 1992) (internal quotation marks omitted)).  See also Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 535-36 (1st Cir. 1995) (discussing the ripeness doctrine in the context of declaratory relief).

The dispute pressed by Plaintiff is not ripe for judicial review.  Plaintiff seeks monetary relief and declaratory relief because his tenant walked away from a potential controversy over the tenant's alleged right to use Plaintiff's commercial building for an expanded church.  Whatever hardship befalls Plaintiff, it is due to his tenant's decision to walk away from the

---

[8]      On the other hand, it is not beyond contemplation that a local zoning board might fashion a particularized solution for a municipal resident such as Rock Church, depending on the particular circumstances that might be present.  Moreover, there certainly is a substantial amount of prudence in the idea of holding off on federal litigation against a municipality when the only thing that has transpired is a code enforcement officer's denial of a permit application.  Here, Rock Church simply walked away upon denial of the permit and Plaintiff was not even named in the permit application.

property.  Withholding judgment under these circumstances will not impose any hardship on

Plaintiff.  Had Rock Church remained, or had another religious assembly or institution sought to

rent an expanded church space in Plaintiff's commercial building, then the ripeness question

would turn on whether the Brewer Zoning Board of Appeals might have provided Brewer's final

determination on an administrative record.[9]  But because Rock Church has abandoned the matter,

it is not essential to address the finality issue from that perspective.  Rock Church's departure

and the absence of another church tenant make this case unripe.

**C.     Individual-capacity liability**

Defendants maintain that RLUIPA does not authorize claims against individual state

actors in their personal capacities, only in their official capacities.  (Mot. to Dismiss at 8.)  The

individual liability question arises because congressional power to enact RLUIPA does not arise

under section 5 of the Fourteenth Amendment but, instead, under the Spending Clause.  See

Sossamon v. Texas, 131 S. Ct. 1651 (2011) (holding that the States, by accepting federal funds,

do not consent to waive their sovereign immunity to suits for money damages under RLUIPA);

City of Boerne v. Flores, 521 U.S. 507 (1997) (holding that the Religious Freedom Restoration

Act (RLUIPA's predecessor) was unconstitutional as applied to state and local governments

because it exceeded the scope of congressional power under section 5 of the Fourteenth

Amendment).  Circuit Courts of Appeals have held that whatever "appropriate relief" might

mean under RLUIPA, 42 U.S.C. § 2000cc-2(a), the Spending Clause does not authorize

Congress to impose personal liability on individual state actors because such individuals have

not themselves received federal funds in exchange for the imposition of personal liability.  Sharp

---

[9]     Had Rock Church remained or had another church presented itself as interest in leasing a larger space than
the space Rock Church previously occupied, then the standing recommendation would have been different, too,
because injunctive relief could have redressed a controversy pertaining to a tenant's alleged right under RLUIPA to
use the commercial building for religious exercise.

v. Johnson, 669 F.3d 144, 154-55 (3d Cir. 2012) ("[I]t cannot be said that RLUIPA's 'appropriate relief' language unambiguously signaled Congress's intent to impose a condition of individual liability."); Nelson v. Miller, 570 F.3d 868, 889 (7th Cir. 2009) ("declin[ing] to read RLUIPA as allowing damages against defendants in their individual capacities" because to do so "would raise serious questions regarding whether Congress had exceeded its authority under the Spending Clause"); Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009) ("[I]n simply defining 'government' in § 2000cc-2 to include a 'person acting under color of State law,' Congress did not signal with sufficient clarity an intent to subject such a person to an individual capacity damages claim under RLUIPA"); Sossamon v. Texas, 560 F.3d 316, 329 (5th Cir. 2009) ("To decide otherwise would create liability on the basis of a law never *enacted* by a sovereign with the power to affect the individual rights at issue."), aff'd on other grounds, Sossamon v. Texas, 131 S. Ct. 1651, 1663 (2011); Smith v. Allen, 502 F.3d 1255, 1275 (11th Cir. 2007) ("[A] provision that derives from Congress' Spending Power cannot be construed as creating a private action against individual defendants for monetary damages.") (internal punctuation removed).  Our own Circuit Court of Appeals has reserved ruling on the question. Kuperman v. Wrenn, 645 F.3d 69, 78-79 (1st Cir. 2011).  The Court need not reach this question if it agrees with the foregoing recommendations concerning Defendants' standing and ripeness challenges.  If it does reach the question, I recommend that it dismiss the claims to the extent they request relief in damages against Defendant Breadmore in his personal capacity.  Although Breadmore is different from the individual defendants in the cited cases because he is a municipal employee rather than a state employee, that distinction should not be determinative.

## CONCLUSION

Rock Church's decision to vacate the premises and seek out another location for its religious exercise raises a jurisdictional bar in this case because the remaining plaintiff, a landlord complaining of lost rent and not about his own exercise of religion, is relying on the statutory rights of a third-party to advance his claim and that third-party has walked away from the controversy and has not been replaced by another religious-use tenant or prospective tenant. Because there is nobody seeking to occupy the premises for the purposes of religious exercise, the relief sought by Plaintiff would do nothing to advance the rights that are allegedly violated by Brewer's Land Use Code. A landlord does not obtain a cause of action for money damages whenever a tenant moves on because of a municipal land use restriction and RLUIPA does not override rules of standing that would prevent a landlord from advancing the RLUIPA rights of departed tenants. Under the circumstances, the church's departure deprives Plaintiff of standing and renders the action unripe for judicial review.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

September 12, 2012                    /s/ Margaret J. Kravchuk
                                      U.S. Magistrate Judge